**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| HERITAGE FOUNDATION., | ) | |
| 214 Massachusetts Ave. N.E. | ) | |
| Washington, D.C.  20002 | ) | |
| | ) | |
| MIKE HOWELL | ) | |
| 214 Massachusetts Ave. N.E. | ) | |
| Washington, D.C.  20002 | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Case No. 22-cv-3102 |
| | ) | |
| DEPARTMENT OF JUSTICE | ) | |
| 950 Pennsylvania Ave. N.W. | ) | |
| Washington, D.C.  20408 | ) | |
| | ) | |
| *Defendant*. | ) | |

_____

## COMPLAINT AND PRAYER FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs THE HERITAGE FOUNDATION and MIKE HOWELL (collectively "Heritage")

for their complaint against Defendant DEPARTMENT OF JUSTICE ("DOJ" or "Department")

allege on knowledge as to Plaintiffs, and on information and belief as to all other matters, as

follows:

1.      As to the Supreme Court, May 2, 2022, is a "day which shall live in infamy."  A

complete copy of Justice Samuel A. Alito's draft opinion in *Dobbs v. Whole Women's Health*

was leaked to the press.  Never before had a full opinion been leaked.  The Supreme Court's

reputation as the only institution in Washington, D.C., that does not leak was shattered; hyper

partisan resetting of norms had reached even the Court.  And the leak occurred in the highest

profile case possible —the first time since 1992 the Court had seriously considered a direct

request to overrule its hugely controversial opinion in *Roe v. Wade*.

2.      That was bad enough.  But there was more.

3.      Protests erupted.  Many of the protests took the familiar form outside of the Supreme Court building.  This case concerns another rarely seen category of protests—protests at the private homes of Justices.  These protests were largely focused on efforts to pressure the Court into refusing to overrule *Roe*.  Even Justice Amy Coney Barrett's children's schools and her church were targeted.  An individual was arrested plotting to assassinate Justice Brett M. Kavanaugh and potentially other Justices in part to ensure *Roe* was sustained.  After *Dobbs* came down on June 23, 2022 the protests continued unabated at Justices' private homes.  Post *Dobbs*, the various protests had as their focus pressuring Justices on abortion jurisprudence.  No one doubts that there will soon be cases before the Court regarding *Dobbs*' implementation.  Indeed, motions practice on the issue has already begun.  With continued protests came a new twist, as Justice Kavanaugh was driven from a Washington D.C. restaurant by protestors, and groups urged similar conduct.  Over the summer, the protests expanded geographic locales to include Justices' summer homes and destinations.

4.      These protests at Justices' private residences appear to be illegal.  18 U.S.C. § 1507 ("Section 1507") provides in pertinent part:

> Whoever, with the intent of interfering with, obstructing, or impeding the administration of justice, or with the intent of influencing any judge, juror, witness, or court officer, in the discharge of his duty, pickets or parades in or near a building housing a court of the United States, or in or near a building or residence occupied or used by such judge, juror, witness, or court officer, or with such intent uses any sound-truck or similar device or resorts to any other demonstration in or near any such building or residence, shall be fined under this title or imprisoned not more than one year, or both.

Section 1507 was written by Justices, an identical statue was sustained against facial First Amendment attack, and Section 1507 has recently been enforced against protestors at the Supreme Court.

5.     But the Department refused to enforce the statute as to the protests at Justices'

private homes.  The Department's refusal to invoke Section 1507 played out in real-time on

national media which devoted considerable coverage to this specific issue.  Numerous Members

of Congress, media outlets, the Governors of Virginia and Maryland, and pundits implored the

Department to enforce Section 1507 as to the protests at Justices' private residences.  But the

Department did not.  The subsidiary pleas of numerous Members of Congress and the press for

an explanation of why the Department would not enforce Section 1507 as part of its efforts to

protect the Justices against an unprecedented public pressure campaign went unanswered.

6.     So to did Plaintiffs' FOIA requests.  Plaintiffs' first request, filed on June 17,

2022, was not even acknowledged.  Plaintiff's second FOIA request, filed on July 28, 2022,

remains substantively unanswered.  The Department has repeatedly exceeded or ignored

applicable statutory deadlines for responding to Plaintiffs' Requests themselves as well as

Plaintiffs' request for expedited processing of the July 28, 2022 request.

7.     Attorney General Merrick Garland recently stated that:

Faithful adherence to the rule of law is the bedrock principle of the Justice
Department and of our democracy.
Upholding the rule of law means applying the law evenly, without fear or favor.
Under my watch, that is precisely what the Justice Department is doing.
All Americans are entitled to the evenhanded application of the law, to due
process of the law, and to the presumption of innocence.

Attorney General Merrick Garland, Remarks (Aug. 11, 2022),

https://www.justice.gov/opa/speech/attorney-general-merrick-garland-delivers-remarks (last

visited Oct. 11, 2022).  FOIA is a law.  Yet the Department has repeatedly failed to meet its

obligations thereunder.

8.     Section 1507 is also a law.  Why then the refusal to enforce Section 1507?  Why

the Department's refusal to answer public questions about its position on how Section 1507

interacts with protests?  Why no substantive response to the numerous Members of Congress

who have reasonably asked the Department to state its position on how Section 1507 applies to

the protests and thus make law publicly—as opposed to behind closed doors.  (Presumably, the

Department's response to Members would inform whether Members take some form of

legislative action on this issue).  This lawsuit seeks answers to these important questions.

9.      At bottom the Department has repeatedly *not* followed the law.  Plaintiffs are

therefore left with no option but to bring this case and seek the aid of the court to hold the

Department to its promise to "[f]aithful adherence to the rule of law," and to "apply[] the law

evenly, without fear or favor."  *Id.*

## PARTIES

10.      Plaintiff, The Heritage Foundation is a Washington, D.C.-based nonpartisan think

tank with a national and international reputation whose mission is to "formulate and promote

public policies based on the principles of free enterprise, limited government, individual

freedom, traditional American values, and a strong national defense."  Heritage Foundation*,*

*About Heritage*, https://www.heritage.org/about-heritage/mission (last visited Oct. 11, 2022).

Heritage is a not-for-profit section 501(c)(3) organization which engages in substantial

dissemination of information to the public.  Heritage operates a national news outlet, *The Daily*

*Signal*.

11.      Plaintiff Mike Howell heads the Heritage Foundation's Oversight Project and is

an author for *The Daily Signal*.  The Oversight Project is an initiative aimed at obtaining

information via Freedom of Information Act requests and other means in order to best inform the

public and Congress for the purposes of Congressional oversight.  The requests and analysis of

information is informed by Heritage's deep policy expertise.  For example, former Acting

Customs and Border Protection Commissioner Mark Morgan and former Acting Immigration and Customs Enforcement Director Tom Homan are Visiting Fellows with The Heritage Foundation and draw on their experience and expertise to analyze information. They also use their broad public engagement to inform the general public.

12.     Heritage operates a national news outlet, *The Daily Signal*. *The Daily Signal* has covered—and is actively covering—both the Supreme Court protests and their interaction with Section 1507. *See* Joshua Arnold, *Leftist Group Offers to Pay Anyone Who Abets Supreme Court Harassment* (July 13, 2022); Hans von Spakovsky, *Refusing to Prosecute Those Protesting at Supreme Court Justices' Homes is Inexcusable*, Daily Signal (May 31, 2022); Zach Smith, *"Stay Away from Homes and Families" of Justices, Sen. Dick Durbin Tells Supreme Court Protestors. He's Right*, Daily Signal (May 12, 2022); Douglas Blair, *What I Saw When Protestors Marched to Supreme Court Justices' Homes*, Daily Signal (May 07, 2022); Laurel Duggan, *Biden White House Refuses to Condemn "Disgusting" Effort to Intimidate Supreme Court Justices*, Daily Signal (May 6, 2022).

13.     Defendant the Department of Justice is a federal agency of the United States within the meaning of 5 U.S.C. § 552(f)(1) whose mission is to "uphold the rule of law, to keep our country safe, and to protect civil rights." https://www.justice.gov/about#:~:text=Mission,and%20to%20protect%20civil%20rights. (last visited Oct. 11, 2022).

## JURISDICTION AND VENUE

14.     This Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B) because this action is brought in the District of Columbia and 28 U.S.C. § 1331 because the resolution of disputes under FOIA presents a federal question.

15.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendant

DHS's principal place of business is in the District of Columbia.

## FACTUAL BACKGROUND

### The Protests

16.     Immediately after the leak of the *Dobbs* opinion, protests began outside of

Justices' private homes.  Some of the protestors appeared to be acting as individuals; others were

clearly part of organized activity.  These protests in some form or another all appeared on their

face to be designed to influence *Dobbs*, and after *Dobbs* came down, to influence the Court's on-

going abortion jurisprudence.  The protests were later expanded from Justices' private homes,

with groups advocating the harassment of Justices at restaurants and one advocacy group

releasing information regarding Justice Amy Coney Barrett's children's schools and her church.

17.     A brief chronology from the Record of the nature of the protests follows.

- The Five (FOX television broadcast May 6, 2022) ("A group of radicals posting home addresses of the six conservative leaning justices and encouraging protest following the leak of the draft opinion that could overturn *Roe v. Wade*."), App. A 679.[1]

---

[1] Plaintiffs' July FOIA Request attached 7 Appendices to insure compliance with FOIA's requirement that a request for expedited processing is evaluated based on the record placed before the Department.

      Appendix A is a collection of pertinent transcripts of network news television broadcasts, national newspaper articles, and press releases related to protests concerning the Supreme Court and Section 1507.
      Appendix B is a collection of pertinent Senate Floor statements related to protests concerning the Supreme Court and Section 1507.
      Appendix C is a collection of pertinent House Floor statements related to protests concerning the Supreme Court and Section 1507.
      Appendix D is a collection of letters from Members of Congress related to protests concerning the Supreme Court and Section 1507.
      Appendix E is a May 11, 2022 letter from 25 State Attorneys General to Attorney General Merrick Garland concerning protests, the Supreme Court, and Section 1507.
      Appendix F is a July 1, 2022 Letter from the Marshal of the Supreme Court to Maryland Governor Larry Hogan requesting that he cause the Maryland law against picketing at homes to be enforced against protestors at Justices' residences.

- Editorial Board, Wash. Post (May 10, 2022) ("An issue that illuminates this imperative in sharp relief is residential picketing—protests against the actions or decisions of public officials at their homes, such as the recent noisy abortion rights demonstrations at the Montgomery County dwellings of Supreme Court Chief Justice John G. Roberts Jr. and Justice Brett M. Kavanaugh.  The disruptors wanted to voice opposition to a possible overruling of *Roe v. Wade*, as foreshadowed by a leaked majority draft opinion last week.  What they mainly succeeded in doing was to illustrate that their goal—with which we broadly agree—does not justify their tactics."), App. 628.

- Special Report (FOX television broadcast May 10, 222) ("Night after night, pro-choice activists protests outside the homes of Supreme Court justices.  And day after day, the White House supports them."), App. A 609.

- Morgan Phillips & Katelyn Caralle, *"Just Because People are Passionate Does Not Mean They are Violent":  Psaki Defends Non-violent Protests*, DailyMail Online (May 10, 2022) ("'Ruth Sent Us' doxxed the Washington, D.C.-area addresses of the six conservative Supreme Court Justices and organized 'walk-bys' of their residences this week to protest the impending opinion that will overturn *Roe v. Wade*.  The group announced a so-called 'walk-by Wednesday' for May 11, 2022, saying marches will take place 'at the homes of the six extremist justices, three in Virginia and three in Maryland.'  On Monday, protesters rallied outside the home of Justice Samuel Alito in Virginia, after dozens of people also gathered over the weekend outside the homes of Justice Brett Kavanaugh and Chief Justice John Roberts in the Washington and Maryland suburbs.  Roberts has said that he doesn't support a full overturn of *Roe v. Wade*, but claimed he would be in favor of allowing a Mississippi law that makes abortion illegal at the 15-week point of a pregnancy."), App. A 586–87.

- Tucker Carlson (FOX television broadcast May 10, 2022) ("So it's hard to believe this happened.  We actually checked it just to make certain it happened, but it did happen.  Today at the White House, Jen Psaki, the outgoing White House Press Secretary encouraged the mob, thugs affiliated with the Democratic Party to threaten and intimidate Supreme Court Justices at their homes where their families live.  There's a quote, 'We certainly continue to encourage protests outside of Judges' homes,' Psaki said.  There is no mistaking what she meant.  She said it right out loud.  So no one has said this ever before from the White House podium.  It's a Federal crime as far as we know."), App. A 558.

- Hannity (FOX television broadcast May 10, 2022) ("Now, Justice Alito and his family and Justice Kavanaugh and Justice Roberts, and in some cases forcing them to flee their

---

Appendix G is a copy of H. Res. 1111, 117 Cong. 2d Sess. and a co-sponsor list as of July 22, 2022.

Request at 7.  Citations to the Appendices filed in support of Plaintiffs' application for expedited processing of their July Request are in the form "App. _ ____."

own homes"), App. A 536; *id.* ("Now a pro-abortion group is now planning to hold more protests at Justices private homes.").

- Callie Patteson, *The DOJ Abstains Mum on Abort Protests*, N.Y. Post (May 11, 2022) ("Monday night saw the latest rally outside Alito's home, where about 100 people gathered, held signs and chanted, 'Our bodies, our voice!' as well as, 'Alito is a coward.'"), App. A 566.

- Hannity (FOX television broadcast June 9, 2022) ("Now, naturally, a few weeks ago, Schumer didn't seem to mind at all the Kavanaugh's address and other Supreme Court justices' addresses were published online and that so-called protester showed up outside of his house. He does have young children in a family."), App. 253.

- Fox News at Night (FOX television broadcast June 9, 2022) ("Breaking tonight, protests outside the home of Supreme Court Justice Brett Kavanaugh, as several officers guard the residence. This is just hours after a man armed with a pistol, knife, and other weapons was arrested and charged with attempted murder of the Justice."), App. A 236.

- Fox News Sunday (FOX television broadcast June 12, 2022) ("These groups published the conservative justices' addresses online. They've been protesting nightly."), App. A 341.

- Fox News at Night (FOX television broadcast June 14, 2022) (discussing "protests tonight outside the homes of Supreme Court Justices"), App. A 217.

- Kaelan Deese, *McConnell Demands Answers from DOJ on Supreme Court Security After Kavanaugh Plot*, Wash. Exam'r (June 15, 2022) ("Top Republican lawmakers sent a letter to the Justice Department on Wednesday demanding answers over a lack of criminal prosecution surrounding 'illegal picketing' outside the homes of Supreme Court justices, one week after a man was arrested and charged after plotting to kill Justice Brett Kavanaugh."), App. A 211.

- Alex Swoyer, *Protests at Justices' Homes Trigger GOP Call with DOJ Action*, Wash. Times (June 16, 2022) ("Their letter comes as a progressive group has urged protesters to appear outside the school where Justice Amy Coney Barrett sends her children."), App. A 209.

- Hannity (FOX television broadcast, June 20, 2022) ("Now, pro-abortion protesters swarmed outside of Justice Amy Coney Barrett's home this weekend, dressed in clothing, appearing to be soaked with blood. Take a look at this. Look, you know, holding baby doll toys, holding signs, reading things like abortion on demand with no apology. Remember, it was Jen Psaki who actually encouraged that type of demonstration, which in fact do violate federal law, 18 USC 1507. Can't intimidate. You can't harass a judge especially on the verge of making a decision. It also comes as at least now pregnancy centers have been targeted by vandalism and property damage since the draft leak of the Supreme Court's opinion. And remember that group Ruth Sent Us also called for

demonstrations at Justice Coney Barrett's church, and even name the school that her children attend, even said how many times she goes to church on any given week."), App. A 150.

- Hannity (FOX television broadcast June 21, 2022) ("We now know the doxxing of every justice has taken place.  In the case of Amy Coney Barrett, these people are giving out the exact school where her children go.  They're telling people what church she goes to and when she goes to church."), App. 128.

- Your Word (FOX television broadcast July 11, 2022) ("By the way, you probably heard recently how Supreme Court Justice Kavanaugh had to sneak out of a Morton's Steakhouse in Washington, D.C., because of protesters outside.  Now we're told that protesters were so enthused by that, that they're offering bounty on those who go to these restaurants, any of these restaurants, and you spot a justice, let them know.  They will pay you.  They might even pick up the tab for your meal."), App. A 090.

- The Five (FOX television broadcast July 11, 2022) (discussing protestors disrupting Justice Kavanaugh dining at Morton's and group offering "$200 cash for real time info that could help protesters find and target the justices."), App. A 062.

- Hannity (FOX television broadcast July 14, 2022) (discussing group offering payments for information on Supreme Court Justices' whereabouts), App. A 031–032.

- Hannity (FOX television Broadcast July 16, 2022) (noting protestors disrupted Justice Kavanaugh's dinner at Morton's), App. A 011.

- Fox Business (FOX television broadcast Jul. 20, 2022) ("They tweeted this, 'we disrupted Brett Kavanaugh's steak dinner and we will disrupt a Congressional Baseball Game.  The monsters tearing our country apart deserve no peace.'  Right shutdown DC.  This is the same group who previously offered cash payments for tips on the locations of Supreme Court Justices."), App. A 003.

## Section 1507

18.     Section 1507 had its origins "from the picketing of federal courthouses by partisans of the defendants during trials involving leaders of the Communist Party." *Cox. v. Louisiana*, 379 U.S. 559, 561 (1965).  That picketing provided what the Supreme Court has described as an "adverse" reaction from "both the bar and the general public." *Id.*  As summarized by the Court, the foremost legal groups of the time all recommended the passage of what became Section 1507:

> At a special meeting held in March 1949, the Judicial Conference of the United States passed the following resolution: "Resolved, That we condemn the practice of picketing the courts, and believe that effective means should be taken to prevent it." Report of the Judicial Conference of the United States, 203 (1949). A Special Committee on Proposed Legislation to Prohibit Picketing of the Courts was appointed to make recommendations to the Conference on this subject. Ibid. In its Report to the Judicial Conference, dated September 23, 1949, at p. 3, the Special Committee stated: "The sentiment of bar associations and individual lawyers has been and is practically unanimous in favor of legislation to prohibit picketing of courts." Upon the recommendation of this Special Committee, the Judicial Conference urged the prompt enactment of the then-pending bill. Report of the Judicial Conference of the United States, 17–18 (1949). Similar recommendations were made by the American Bar Association, numerous state and local bar associations, and individual lawyers and judges. See Joint Hearings before the Subcommittees of the Committees on the Judiciary on S. 1681 and H.R. 3766, 81st Cong., 1st Sess.; H.R.Rep.No. 1281, 81st Cong., 1st Sess.; S.Rep. No. 732, 81st Cong., 1st Sess.; Bills Condemning Picketing of Courts Before Congress, 33 J.Am.Jud.Soc. 53 (1949).

*Cox*, 379 U.S. at 561–62. According to Justice Tom C. Clark, the text that became Section 1507 "was written" by Supreme Court Justices. *Id.* at 595 (Clark, J., concurring in part and dissenting in part).

19.     Section 1507 would survive a First Amendment challenge both facially and as applied to a protest at the private home of a Supreme Court Justice which a properly instructed trier of fact found was intended to "influenc[e]" that Justice in the "discharge of his duty."

20.     In *Cox*, the Supreme Court dealt with a First Amendment challenge to a Louisiana law *in hac verba* with Section 1057. *Id.* at 560–61. A unanimous Court rejected a facial attack:

> We hold that this statute on its face is a valid law dealing with conduct subject to regulation so as to vindicate important interests of society and that the fact that free speech is intermingled with such conduct does not bring with it constitutional protection.

*Id.* at 564; *id.* at 581 (Black, concurring in part and dissenting in part); *id.* at 585 (Clark, J.,

concurring in part and dissenting in part); *id.* at 591 (White J., concurring in part and dissenting

in part).[2]

21.     The Court recognized that not only was preventing judges and jurors from

actually being influenced an important governmental interest, but so to was preventing an

*appearance* of being influenced.  *Id.* at 575.  Also relevant is Justice Black's observation (joined

by Justices White and Harlan) that because "[t]he very purpose of a court system is to adjudicate

controversies, both criminal and civil, in the calmness and solemnity of the courtroom according

to legal procedures[,] . . .[t]he streets are not now and never have been the proper place to

administer justice."  *Id.* at 583; *id.* at 592 (White, J., concurring in part and dissenting in part)

(concurring with opinion of Black, J., on this point).  *See also United States v. Grace*, 461 U.S.

171, 182–83 (1983) (protecting the courts from both actual influence and the appearance of

influence is an important government interest in part because by Constitutional design courts are

not to be lobbied whereas the other two branches affirmatively are); *Hodge v. Talkin*, 799 F.3d

1145, 1163–64 (D.C. Cir. 2015) (similar).

---

[2] The Court reversed the conviction in *Cox* on other grounds.  The conviction was attacked on vagueness grounds, arguing that the term "near" was undefined and hence unconstitutionally vague.  *Cox*, 379 U.S. at 568.  The Court did not directly reach this question, but noted "this lack of specificity may not render the statute unconstitutionally vague, at least as applied to a demonstration within the sight and hearing of those in the courthouse."  *Id.*  It then held that the term "near" (and hence the Louisiana statute) "foresees a degree of on-the-spot administrative interpretation by officials charged with responsibility for administering and enforcing it."  *Id.*  The Court then reversed on the specific facts of the case:  The protest occurred across the street from the courthouse, an area where *Cox* had been given permission to protest by the Chief of Police.  *Id.* at 569–70.  Any argument to extend *Cox* on vagueness grounds to protests at Justices' private homes fails on its own terms.  The protests are on streets and sidewalks yards away from Justices' private residences and therefore clearly within "sight and hearing."  *Id.* at 568.  And presumably any enforcement of Section 1507 would be proceeded by a public warning clearly defining prohibited conduct.

22.     Section 1507 is not a statute in desuetude.  Numerous individuals have been

convicted under Section 1507 for protests at courthouses designed to influence judges and juries.

*See, e.g.*, *United States v. Carter*, 717 F.3d 1216, 1217–18 (8th Cir. 1983) (sustaining conviction

under Section 1507 for protest outside courthouse concerning pending trial); *United States v.*

*Gorgan*, No. 15-cr-00056 (RDM) (D.D.C.) (defendant convicted of oral protest during Supreme

Court oral argument); *United States v. Bronstein*, *et al.*, No. 1:15-cr-00048 (CRC) (D.D.C) (5

defendants convicted of the same); Mem. of Law in Support of Def. Mot. to Dismiss, at 3,

*Adkins v. McGlothlin*, 1:11-cv-00087 (MFU-RSB) (W.D. Va. May 14, 2012) (ECF 31)

(recounting Adkins' conviction under Section 1507 for picketing at a federal courthouse to

protest an adverse verdict in a civil suit, including use of signs accusing the presiding federal

judge of "condoning perjury and selecting a biased jury"); *see also United States v. Williams*,

No. 99-cr-25, 2000 WL 173214, at *11 (D.VI May 20, 2000) (court opining that police officers

protesting criminal prosecution of police officer outside courthouse violated Section 1507);

*United States v. Jones*, 244 F.Supp. 181, 181, 183 (S.D.N.Y. 1965) (defendants who blocked

entrance to courthouse as a protest could have "properly" been convicted under Section 1507).

**<u>The Protests and Section 1507</u>**

23.     The national broadcast media and national press coverage has consistently

covered the interplay between protests at Supreme Court Justices' private residences and Section

1507.  *See generally* App. A.  The majority of that press coverage has focused (and focuses) on

allegations by Members of Congress, national news organizations, and subject matter experts

that Attorney General Garland acted improperly by failing to enforce Section 1507 against

protesters at Justices' residences (for what many allege are improper political purposes).  *See,*

*e.g.*, App. A at 002–003, 013, 031–033, 049–050, 062–064, 076–077, 090–092, 100–101, 129–

130, 150–151, 155–156, 158–159, 169, 183, 190–195, 207, 209, 211–212, 214–215, 233–234, 236–238, 262–263, 275–277, 284–288, 305–306, 327–329, 364–366, 373–379, 385–386, 391–392, 395–399, 401–405, 435–438, 440–441, 443–444, 446–447, 449–450, 452–454, 456–457, 459–461, 488–93, 495–98, 500, 502–507, 566–567, 573–576, 578–580.  The widespread press coverage of these accusations cannot help but to undermine public confidence in DOJ's impartial administration of the law.  Moreover, some of these widely reported accusations have gone further to explicitly state that Attorney General Garland not enforcing Section 1507 against protests at Justices' private homes *should* cause (or *has* caused) the public to lose confidence in DOJ's impartial administration of the law.  *See* App. A at 003, 049–050, 100–101, 191–192, 275–277, 327–329.

24.     In addition to this press coverage, since the beginning of the protests, Members of Congress have taken to the Senate and House Floor to state their view that protestors at Justices' private homes seeking to influence the Court's decisions should be prosecuted under Section 1507.  *See* App. B; App. C.  Many of these Members went further and stated their view that Attorney General Garland was—and is—derelict in his duty to enforce Section 1507.  *See* App. B at 003 (Minority Leader Mitch McConnell); *id.* at 034–035 (same); *id.* at 069–70 (same); App. C at 001 (Rep. John Rose); *id.* at 005 (Minority Whip Steve Scalise); *id.* at 027–028 (Rep. Mike Johnson); *id.* at 033 (Rep. Darrell Issa).

25.     Members of Congress have also sent numerous letters to the Department requesting that the Department provide information related to its decision making concerning the application of Section 1507 to protests at Justices' homes and urging enforcement of Section 1507.  *See* App. D.  Many of those letters alleged or suggested impropriety on Attorney General Garland's part.  *See* App. D at 001–002 (Sen. Ted. Cruz); *id.* at 006–008 (12 Sens.); *id.* at 009–

010 (Sen. Josh Hawley); *id.* at 011–012 (Sen. Ron Johnson); *id.* at 016–022 (48 Reps.); *id.* at

023–025 (Sen. Chuck Grassley); *id.* at 027 (Sen. Tom Cotton suggesting impeachment could be

warranted).  On belief, substantive responses have not been provided.  At the time of the Record,

70 House Members were co-sponsors of H. Res. 1111 which expressly calls upon "the

Department of Justice to enforce section 1507 of title 18, United States Code, with respect to

protests outside of the homes of sitting Supreme Court Justices."  *See* App. G.

26.      State Attorneys General have also condemned both the protests and Attorney

General Garland's failure to enforce Section 1507.  On May 11, 2022, 25 Attorneys General

urged Attorney General Garland to enforce Section 1507 against protestors at Justices' homes

and have suggested that a failure to promptly so enforce Section 1507 would be improperly

political.  *See* App. E.  No such prompt enforcement has occurred.

27.      Maryland Governor Laurence Hogan and Virginia Governor Glen Younkin

transmitted a letter to Attorney General Garland urging him to enforce Section 1507 against

protestors at Justices' residences.  @GovLarryHogan, Twitter (May 11, 2022, 5:00 PM)

https://twitter.com/GovLarryHogan/status/1524494786031280128?ref_src=twsrc%5Etfw%7Ctw

camp%5Etweetembed%7Ctwterm%5E1524494786031280128%7Ctwgr%5E%7Ctwcon%5Es1_

&ref_url=https%3A%2F%2Fwww.wmar2news.com%2Fnews%2Flocal-news%2Fmaryland-

virginia-governors-call-on-department-of-justice-to-provide-resources-to-keep-supreme-court-

justices-and-their-families-safe.  According to Governor Hogan's press secretary the Justice

Department responded "declining to enforce the law."  @riccimike, Twitter (July 2, 2022, 3:20

PM)

*https://twitter.com/riccimike/status/1543313595563495424?ref_src=twsrc%5Etfw%7Ctwcamp*

*%5Etweetembed%7Ctwterm%5E1543313595563495424%7Ctwgr%5E%7Ctwcon%5Es1_&ref_*

*url=https%3A%2F%2Fwww.foxnews.com%2Fus%2Fmaryland-virginia-respond-supreme-court-letter*.  Again, on information, the Department of Justice has not provided a substantive response.

28.     The Marshal of the Supreme Court recently wrote Governor Hogan and Governor Youngkin after the conclusion of the October 2021 Term recounting the intensity of the protests at Supreme Court Justices' homes and requesting that local laws be enforced against these protestors.  *See, e.g.*, App. F (letter to Gov. Hogan).

## PLAINTIFF'S FOIA REQUESTS

### Plaintiff's First FOIA Request

29.     On June 17, 2022, Plaintiffs transmitted a FOIA Request to the Department of Justice via email to MRUFOIA.Requests@usdoj.gov ("June Request" or "Plaintiffs' June FOIA Request") (Ex. 1); *see also* Ex. 2 (sent email).

30.     The June Request sought "All communications and attachments to and from the individuals below using any of the following terms:  protest, protests, protester, protesters, picketing, parading, 18 U.S.C. 1507, demonstration or demonstrations" (June Request at 1) from a designated set of Department officials (*id.* at 1–2).  Temporally, it sought records from May 2, 2021 to June 17, 2022.  *Id.* at 2.

31.     The June Request also sought a fee waiver based on Heritage's status as a 501(c)(3) nonprofit, Plaintiffs' non-commercial purpose, Plaintiffs' status as representatives of the news media, and the fact that the records related to an important issue.  *Id.* at 3–4.

32.     Plaintiffs are unaware of any substantive Department response to the June Request.

33.     20 working days from June 17, 2022 was July 19, 2022.

**Plaintiffs' Second FOIA Request**

34.     Plaintiffs' second FOIA request was transmitted on July 28, 2022.  That request sought:  "All records related [to] 18 U.S.C. § 1507 and protests, picketing, parades, demonstrations, occupations, sit-ins, or any other form of protest at the residences of the Chief Justice of the United States or the Associate Justices of the Supreme Court of the United States." FOIA Request 2020-1595, at 1 (July 28, 2022) ("July Request" or "Plaintiffs' July FOIA Request") (Ex. 3).  The July Request sought records from January 20, 2021 to present.

35.     The July Request sought expedited processing pursuant to 28 C.F.R. § 16.5(e)(1)(iv).  July Request at 4.  The July Request supported its claim for expedited processing with a detailed 8 page presentation of law and fact and seven factual appendices.  *Id.* at 4–11.

36.     The July Request also sought a fee waiver based on Heritage's status as a 501(c)(3) nonprofit, Plaintiffs' non-commercial purpose, Plaintiffs' status as representatives of the news media, and the fact that "[t]he requested information is in the public interest as this is an issue of national controversy which has been covered extensively by national broadcast media and national print media" (*id.* at 3) as well as the fact that "numerous Members of Congress have been unable to obtain information from the DOJ concerning the subject matter of this request" (*id.*).

37.     The Department was required to respond to Plaintiffs' application for expedited processing of the July Request within 10 calendar day.  5 U.S.C. § 552(a)(6)(E)(ii)(I).

38.     10 calendar days from July 28, 2022 was August 7, 2022.

39.     The Department did not respond to Plaintiffs' application for expedited processing of the July Request on August 7, 2022.

40.     On August 20, 2022, Plaintiffs transmitted a letter via email to

DOJ.OIP.FOIA@usdoj.gov following-up on the July Request's application for expedited

processing.  Letter from Mike Howell to FOIA Officer (Aug. 20, 2022) (Ex. 4).[3]  That letter

explained that the Department's response was overdue by more than double the applicable 10

day response time.  *Id.* at 1.  It then continued:

> The Request concerns matters of high and ongoing public importance that go directly to
> the integrity of the Department and have several[ly] undermined public confidence in the
> Department's impartial administration of Justice.  This showing more than met and
> continues to meet the applicable standard for expedition as is detailed in the 8 pages of
> detailed argument for expedition in the Request and the factual record comprised of 7
> appendices covering 921 pages.
> Since the *Dobbs* leak and through this day the Justices of the Supreme Court have been
> subject to unprecedented campaigns of harassment at their personal residences which are
> facially designed to influence the Court's abortion jurisprudence.  This conduct is illegal
> under 18 U.S.C. § 1507 ("Section 1507").  But the Department has refused to enforce this
> provision despite public please from numerous federal and state officials and media
> outlets.  Many of these officials and media figures have stated that the Department's
> failure to act represents an improper political decision.  Some ha[ve] gone so far as to
> explicitly state that the Department's failure to enforce Section 1507 should undermine
> public confidence in the Department and cause the electorate to vote against the
> Democratic party in the mid-term elections.  All of this has been widely covered and
> condemned in the press.  The Request seeks records concerning these matters.
> Expedition is warranted.

*Id.* at 1.  The Letter concluded by advising:  "If I do not receive a decision on my expedition

request by the close of business August 23, 2022, I will be compelled to file an action and seek a

preliminary injunction to order expedition.  By this letter I hope to prevent such motions

practice."  *Id.* at 2.

41.     On August 23, 2022, the Office of Information Policy responded.  The cover

email reads in pertinent part:

---

[3] The Letter was addressed to the Director of Public Affairs because under Department
Regulations the Director of Public Affairs makes all determinations on requests for expedited
processing—Department wide—under 28 C.F.R. § 16.5(e)(1)(iv).  *See id.* §16.5(e)(2).

> This communication is in response to the letter attached to the email below concerning FOIA-2022-01595.  Please be advised, about a week ago this Office signed and sent out a letter acknowledging the FOIA request and providing the expedition determination for FOIA-2022-01595.  I am not sure why you did not receive the letter as it was sent to the email address provided in your organization's FOIA submission.  To be of assistance, I am attaching a copy of the signed letter and a copy of the email transmission. I hope this is helpful.

Email from Office of Information Policy to Roman Jankowski (Aug. 23, 2022) (Ex. 5).

42.     The attached letter was dated August 16, 2022 and stated "[t]he Director has determined that your request for expedited processing should be granted" and the Department was invoking "unusual circumstances" pursuant to 5 U.S.C. § 552(a)(6)(B)(i)–(iii).  Letter Re: FOIA-2020-1595, at 1 (Aug. 16, 2022) (Ex. 6).  On its face, the Director's determination does not apply to components likely to have records, but for whom the Office of Information Policy does not handle FOIA requests.  The letter also declined to pass on Plaintiffs' fee waiver until "we determine whether fees will be implicated for this request."  *Id.*

43.     Plaintiffs had not previously received the August 16, 2022 email and letter.

44.     Plaintiffs received nothing further from DOJ concerning the July Request.

45.     30 working days from July 28, 2022 is September 9, 2022.

**FIRST CLAIM FOR RELIEF**
**(June Request)**
**Violation FOIA, 5 U.S.C. §552**
**Failure to Conduct Adequate Searches for Responsive Records.**

46.     Plaintiffs re-allege paragraphs 1–45 as if fully set out herein.

47.     FOIA requires all doubts to be resolved in favor of disclosure.  "Transparency in government operations is a priority of th[e Biden] . . . Administration."  Attorney General, *Memorandum for Heads of Executive Departments and Agencies:  Freedom of Information Act Guidelines*, at 4 (Mar. 15, 2022).

48.     Plaintiffs properly requested records within the possession, custody, and control of Defendant.

49.     Defendant is subject to FOIA and therefore must make reasonable efforts to search for requested records.

50.     Defendant has failed to promptly review agency records for the purpose of locating and collecting those records that are responsive to Plaintiffs' June FOIA Request.

51.     Defendant's failure to conduct searches for responsive records violates FOIA and the DOJ regulations.

52.     Plaintiffs have a statutory right to the information they seek.

53.     Defendant is in violation of FOIA.

54.     Plaintiffs are being irreparably harmed by reason of Defendant's violation of FOIA.  Plaintiffs are being denied information to which they are statutorily entitled and that is important to carrying out Plaintiffs' functions as a non-partisan research and educational institution and publisher of news.  Plaintiffs will continue to be irreparably harmed unless Defendant is compelled to comply with the law.

55.     Plaintiffs have no adequate remedy at law.

56.     Plaintiffs have constructively exhausted their administrative remedies.

**SECOND CLAIM FOR RELIEF**
**(June Request)**
**Violation of FOIA, 5 U.S.C. § 552**
**Wrongful Withholding of Non-Exempt Responsive Records**

57.     Plaintiffs re-allege paragraphs 1–56 as if fully set out herein.

58.     FOIA requires all doubts to be resolved in favor of disclosure.  "Transparency in government operations is a priority of th[e Biden] . . . Administration."  Attorney General,

*Memorandum for Heads of Executive Departments and Agencies: Freedom of Information Act Guidelines*, at 4 (Mar. 15, 2022).

59.     Plaintiffs properly requested records within the possession, custody, or control of Defendant.

60.     Defendant is subject to FOIA, and therefore must release to a FOIA requester any non-exempt records and provide a lawful reason for withholding any records.

61.     Defendant is wrongfully withholding non-exempt records requested by Plaintiff by failing to produce any records responsive to Plaintiffs' June FOIA Request.

62.     Defendant is wrongfully withholding non-exempt-agency records requested by Plaintiffs by failing to segregate exempt information in otherwise non-exempt records responsive to Plaintiffs' June FOIA Request.

63.     Defendant's failure to provide all non-exempt responsive records violates FOIA and DOJ regulations.

64.     Plaintiffs have a statutory right to the information they seek.

65.     Defendant is in violation of FOIA.

66.     Plaintiffs are being irreparably harmed by reason of Defendant's violation of FOIA.  Plaintiffs are being denied information to which they are statutorily entitled and that is important to carrying out Plaintiffs' functions as a non-partisan research and educational institution and publisher of news.  Plaintiffs will continue to be irreparably harmed unless Defendant is compelled to comply with the law.

67.     Plaintiffs have no adequate remedy at law.

68.     Plaintiffs have constructively exhausted their administrative remedies.

<u>**THIRD CLAIM FOR RELIEF**</u>
**(June Request)**
**Violation of FOIA, 5 U.S.C. § 552**
**Wrongful Denial of Fee Waiver**

69.     Plaintiffs re-allege paragraphs 1–68 as if fully set out herein.

70.     FOIA requires all doubts to be resolved in favor of disclosure.  "Transparency in government operations is a priority of th[e Biden] . . . Administration." *Attorney General, Memorandum for Heads of Executive Departments and Agencies:  Freedom of Information Act Guidelines*, at 4 (Mar. 15, 2022).

71.     Plaintiffs properly requested records within the possession, custody, or control of Defendant.

72.     Defendant has constructively denied Plaintiffs' application for a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(ii) & (iii) and 28 C.F.R. §16.10(k).

73.     The Request does not have a commercial purpose because Heritage is a 501(c)(3) nonprofit, Howell acts in his capacity as a Heritage employee, and release of the information sought does not further Plaintiffs' commercial interest.

74.     Plaintiffs are members of the news media as they "gather[] information of potential interest to a segment of the public, use[] . . . [their] editorial skills to turn the raw materials into a distinct work, and distribute[] that work to an audience" via Heritage's major news outlet, *The Daily Signal*.  5 U.S.C. § 552(a)(4)(a)(ii).

75.     Disclosure of the information sought by the June Request also "is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government."  5 U.S.C. § 552(a)(4)(A)(iii).

76.     Defendant has "failed to comply with a[]time limit under paragraph (6)" as to the Request.  5 U.S.C. § 552(a)(4)(A)(viii)(I).

77.     Plaintiffs have a statutory right to a fee waiver.

78.     Defendant is in violation of FOIA by denying a fee waiver.

79.     Plaintiffs are being irreparably harmed by reason of Defendant's violation of
FOIA.  Plaintiffs are being denied a fee waiver to which they are statutorily entitled and that is
important to carrying out Plaintiffs' functions as a non-partisan research and educational
institution and publisher of news.  Plaintiffs will continue to be irreparably harmed unless
Defendant is compelled to comply with the law.

80.     Plaintiffs have no adequate remedy at law.

81.     Plaintiffs have constructively exhausted their administrative remedies.

**FOURTH CLAIM FOR RELIEF**
**(June Request)**
**Violation of FOIA, 5 U.S.C. § 552**
**Statutory Bar Against Charging Fees**

82.     Plaintiffs re-allege paragraphs 1–81 as if fully set out herein.

83.     FOIA requires all doubts to be resolved in favor of disclosure.  "Transparency in
government operations is a priority of th[e Biden] . . . Administration."  Attorney General,
*Memorandum for Heads of Executive Departments and Agencies:  Freedom of Information Act
Guidelines*, at 4 (Mar. 15, 2022).

84.     Plaintiffs properly requested records within the possession, custody, or control of
Defendant.

85.     The June Request does not have a commercial purpose because Heritage is a
501(c)(3) nonprofit, Howell acts in his capacity as a Heritage employee, and release of the
information sought does not further Plaintiffs' commercial interest.

86.     Plaintiffs are members of the news media as they "gather[] information of
potential interest to a segment of the public, use[] . . . [their] editorial skills to turn the raw

22

materials into a distinct work, and distribute[] that work to an audience" via Heritage's major

news outlet, *The Daily Signal*.  5 U.S.C. § 552(a)(4)(a)(ii).

87.     Disclosure of the information sought by the June Request also "is in the public

interest because it is likely to contribute significantly to public understanding of the operations or

activities of the government."  5 U.S.C. § 552(a)(4)(A)(iii).

88.     Defendant has "failed to comply with a[]time limit under paragraph (6)" as to the

June Request.  5 U.S.C. § 552(a)(4)(A)(viii)(I).

89.     Defendant has not determined "more than 5,000 pages are necessary to respond to

this request," or discussed with Plaintiffs how Plaintiffs "could effectively limit the scope of the

request."  5 U.S.C. § 552(a)(4)(A)(viii)(II)(cc).

90.     Defendant is currently statutorily barred from charging fees related to Plaintiffs'

June FOIA Request.  Therefore, Plaintiffs have a statutory right to have its request processed

without being charged any fees.

91.     Plaintiffs are being irreparably harmed by reason of Defendant's violation of

FOIA.  Plaintiffs will continue to be irreparably harmed unless Defendant is compelled to

comply with the law.

92.     Plaintiffs have no adequate remedy at law.

93.     Plaintiffs have constructively exhausted their administrative remedies.

**FIFTH CLAIM FOR RELIEF**
**(July Request)**
**Violation FOIA, 5 U.S.C. §552**
**Failure to Conduct Adequate Searches for Responsive Records.**

94.     Plaintiffs re-allege paragraphs 1–93 as if fully set out herein.

95.     FOIA requires all doubts to be resolved in favor of disclosure.  "Transparency in

government operations is a priority of th[e Biden] . . . Administration."  Attorney General,

*Memorandum for Heads of Executive Departments and Agencies:  Freedom of Information Act Guidelines*, at 4 (Mar. 15, 2022).

96.     Plaintiffs properly requested records within the possession, custody, and control of Defendant.

97.     Defendant is subject to FOIA and therefore must make reasonable efforts to search for requested records.

98.     Defendant has failed to promptly review agency records for the purpose of locating and collecting those records that are responsive to Plaintiffs' July FOIA Request.

99.     Defendant's failure to conduct searches for responsive records violates FOIA and the DOJ regulations.

100.    Plaintiffs have a statutory right to the information they seek.

101.    Defendant is in violation of FOIA.

102.    Plaintiffs are being irreparably harmed by reason of Defendant's violation of FOIA.  Plaintiffs are being denied information to which they are statutorily entitled and that is important to carrying out Plaintiffs' functions as a non-partisan research and educational institution and publisher of news.  Plaintiffs will continue to be irreparably harmed unless Defendant is compelled to comply with the law.

103.    Plaintiffs have no adequate remedy at law.

104.    Plaintiffs have constructively exhausted their administrative remedies.

## SIXTH CLAIM FOR RELIEF
### (July Request)
### Violation of FOIA, 5 U.S.C. § 552
### Wrongful Withholding of Non-Exempt Responsive Records

105.    Plaintiffs re-allege paragraphs 1–104 as if fully set out herein.

106.     FOIA requires all doubts to be resolved in favor of disclosure.  "Transparency in government operations is a priority of th[e Biden] . . . Administration."  Attorney General, *Memorandum for Heads of Executive Departments and Agencies:  Freedom of Information Act Guidelines*, at 4 (Mar. 15, 2022).

107.     Plaintiffs properly requested records within the possession, custody, or control of Defendant.

108.     Defendant is subject to FOIA, and therefore must release to a FOIA requester any non-exempt records and provide a lawful reason for withholding any records.

109.     Defendant is wrongfully withholding non-exempt records requested by Plaintiffs by failing to produce any records responsive to Plaintiffs' July FOIA Request.

110.     Defendant is wrongfully withholding non-exempt-agency records requested by Plaintiffs by failing to segregate exempt information in otherwise non-exempt records responsive to Plaintiffs' July FOIA Request.

111.     Defendant's failure to provide all non-exempt responsive records violates FOIA and DOJ regulations.

112.     Plaintiffs have a statutory right to the information they seek.

113.     Defendant is in violation of FOIA.

114.     Plaintiffs are being irreparably harmed by reason of Defendant's violation of FOIA.  Plaintiffs are being denied information to which they are statutorily entitled and that is important to carrying out Plaintiffs' functions as a non-partisan research and educational institution and publisher of news.  Plaintiffs will continue to be irreparably harmed unless Defendant is compelled to comply with the law.

115.     Plaintiffs have no adequate remedy at law.

116.     Plaintiffs have constructively exhausted their administrative remedies.

**SEVENTH CLAIM FOR RELIEF**
**(July Request)**
**Violation of FOIA, 5 U.S.C. § 552**
**Wrongful Denial of Fee Waiver**

117.     Plaintiffs re-allege paragraphs 1–116 as if fully set out herein.

118.     FOIA requires all doubts to be resolved in favor of disclosure.  "Transparency in government operations is a priority of th[e Biden] . . . Administration."  *Attorney General, Memorandum for Heads of Executive Departments and Agencies:  Freedom of Information Act Guidelines*, at 4 (Mar. 15, 2022).

119.     Plaintiffs properly requested records within the possession, custody, or control of Defendant.

120.     Defendant has constructively denied Plaintiffs' application for a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(ii) & (iii) and 28 C.F.R. §16.10(k).

121.     The July Request does not have a commercial purpose because Heritage is a 501(c)(3) nonprofit, Howell acts in his capacity as a Heritage employee, and release of the information sought does not further Plaintiffs' commercial interest.

122.     Plaintiffs are members of the news media as they "gather[] information of potential interest to a segment of the public, use[] . . . [their] editorial skills to turn the raw materials into a distinct work, and distribute[] that work to an audience" via Heritage's major news outlet, *The Daily Signal*.  5 U.S.C. § 552(a)(4)(a)(ii).

123.     Disclosure of the information sought by the July Request also "is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government."  5 U.S.C. § 552(a)(4)(A)(iii).

124.    Defendant has "failed to comply with a[]time limit under paragraph (6)" as to the Request.  5 U.S.C. § 552(a)(4)(A)(viii)(I).

125.    Plaintiffs have a statutory right to a fee waiver.

126.    Defendant is in violation of FOIA by denying a fee waiver.

127.    Plaintiffs are being irreparably harmed by reason of Defendant's violation of FOIA.  Plaintiffs are being denied a fee waiver to which they are statutorily entitled and that is important to carrying out Plaintiffs' functions as a non-partisan research and educational institution and publisher of news.  Plaintiffs will continue to be irreparably harmed unless Defendant is compelled to comply with the law.

128.    Plaintiffs have no adequate remedy at law.

129.    Plaintiffs have constructively exhausted their administrative remedies.

### EIGHTH CLAIM FOR RELIEF
### (JULY REQUEST)
### Violation of FOIA, 5 U.S.C. § 552
### Statutory Bar Against Charging Fees

130.    Plaintiffs re-allege paragraphs 1–129 as if fully set out herein.

131.    FOIA requires all doubts to be resolved in favor of disclosure.  "Transparency in government operations is a priority of th[e Biden] . . . Administration."  Attorney General, *Memorandum for Heads of Executive Departments and Agencies:  Freedom of Information Act Guidelines*, at 4 (Mar. 15, 2022).

132.    Plaintiffs properly requested records within the possession, custody, or control of Defendant.

133.    The July Request does not have a commercial purpose because Heritage is a 501(c)(3) nonprofit, Howell acts in his capacity as a Heritage employee, and release of the information sought does not further Plaintiffs' commercial interest.

134.     Plaintiffs are members of the news media as they "gather[] information of potential interest to a segment of the public, use[] . . . [their] editorial skills to turn the raw materials into a distinct work, and distribute[] that work to an audience" via Heritage's major news outlet, *The Daily Signal*.  5 U.S.C. § 552(a)(4)(a)(ii).

135.     Disclosure of the information sought by the July Request also "is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government."  5 U.S.C. § 552(a)(4)(A)(iii).

136.     Defendant has "failed to comply with a[]time limit under paragraph (6)" as to the July Request.  5 U.S.C. § 552(a)(4)(A)(viii)(I).

137.     Defendant has not determined "more than 5,000 pages are necessary to respond to this request," or discussed with Plaintiffs how Plaintiffs "could effectively limit the scope of the request."  5 U.S.C. § 552(a)(4)(A)(viii)(II)(cc).

138.     Defendant is currently statutorily barred from charging fees related to Plaintiffs' July FOIA Request.  Therefore, Defendant has a statutory right to have its request processed without being charged any fees.

139.     Plaintiffs are being irreparably harmed by reason of Defendant's violation of FOIA.  Plaintiffs will continue to be irreparably harmed unless Defendant is compelled to comply with the law.

140.     Plaintiffs have no adequate remedy at law.

141.     Plaintiffs have constructively exhausted their administrative remedies.

### NINTH CLAIM FOR RELIEF
### (July Request)
### Violation of FOIA, 5 U.S.C. § 552
### Wrongful Denial of Expedited Processing

142.     Plaintiffs re-allege paragraphs 1–141 as if fully set out herein.

143.    FOIA requires all doubts to be resolved in favor of disclosure.  "Transparency in government operations is a priority of th[e Biden] . . . Administration."  Attorney General, Memorandum for Heads of Executive Departments and Agencies:  Freedom of Information Act Guidelines, at 4 (Mar. 15, 2022).

144.    Plaintiffs properly requested records within the possession, custody, or control of Defendant.

145.    Plaintiffs properly asked that DOJ expedite the processing of Plaintiffs' July FOIA Request, based upon Plaintiffs' showing of that the Request concerns "[a] matter of widespread and exceptional media interest in which there exist possible questions that affect public confidence in the Government's integrity."  28 C.F.R. § 16.5(e)(1)(iv).

146.    Defendant refused in part to expedite Plaintiffs' July FOIA Request, contrary to the factual and legal showing Plaintiffs made demonstrating their entitlement to expedition.

147.    Defendant is in violation of FOIA.

148.    Plaintiffs are being irreparably harmed by reason of Defendant's violation of FOIA.  Plaintiffs are being denied information to which they are statutorily entitled to on an expedited basis and that is important to carrying out Plaintiffs' functions as a non-partisan research and educational institution and publisher of news.  Plaintiffs will continue to be irreparably harmed unless Defendant is compelled to comply with the law.

149.    Plaintiffs have no adequate remedy at law.

150.    Plaintiffs has exhausted all required administrative remedies with respect to Defendant's failure to make a determination on Plaintiffs' request for expedition.


**WHEREFORE** as a result of the foregoing, Plaintiffs pray that this Court:

A.    Enter a preliminary and permanent injunction compelling Defendant to process Plaintiffs' July FOIA Request on an expedited basis.

B.    Order Defendant to conduct a search or searches reasonably calculated to uncover all records responsive to Plaintiffs' June and July FOIA Requests;

C.    Order Defendants to produce, within twenty days of the Court's order, or by such other date as the Court deems appropriate, any and all non-exempt records responsive to Plaintiffs' June and July FOIA Requests and indexes justifying the withholding of any responsive records withheld in whole or in part under claim of exemption;

D.    Enjoin Defendants from continuing to withhold any and all non-exempt records responsive to Plaintiffs' June and July FOIA Requests;

E.    Retain jurisdiction over this matter as appropriate;

F.    Award Plaintiffs their costs and reasonable attorneys' fees in this action as provided by 5 U.S.C. § 522(a)(4)(E); and

G.    Grant such other and further relief as this Court may deem just and proper.


Dated: October 12, 2022                    Respectfully submitted,


                                           /s/ Samuel Everett Dewey
                                           SAMUEL EVERETT DEWEY
                                           (No. 99979)
                                           Chambers of Samuel Everett Dewey, LLC
                                           Telephone:  (703) 261-4194
                                           Email:  samueledewey@sedchambers.com

                                           ROMAN JANKOWSKI
                                           (No. 975348)
                                           The Heritage Foundation
                                           Telephone:  (202) 489-2969

Email:  Roman.Jankowski@heritage.org

*Counsel for Plaintiffs*